IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FNB BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 13-0064-WS-C |
| | ) | |
| PARK NATIONAL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the Court on the defendants' motion to dismiss and embedded motion for more definite statement. (Doc. 9). The parties have filed briefs in support of their respective positions, (Docs. 10, 18, 20), and the motions are ripe for resolution. After careful consideration, the Court concludes that both motions are due to be denied.

BACKGROUND

According to the complaint, (Doc. 1), non-party Vision Bank ("Vision") made a $5 million loan ("the Loan") to non-party Marine Park, LLC ("Marine") for a real estate development project, secured by certain realty and guarantied by multiple guarantors. In March 2007, Vision sold a 100% participation interest in the loan to the plaintiff, with the parties' obligations memorialized in a written agreement ("the Agreement"). Later the same month, Vision consummated a merger agreement with defendant Park National Corporation ("Park"), a bank holding company, and Vision became Park's subsidiary. Park thereafter became closely involved in supervising Vision. Over the next two years, Vision made a number of misstatements, repeatedly failed to disclose important information, and engaged in other conduct to which the plaintiff objects. The Loan matured

without payment in January 2009, and litigation with Marine and the guarantors is ongoing.

In February 2012, Park sold certain "good" assets of Vision to non-party Centennial Bank.  In February 2012, Park merged Vision into defendant SE Property Holdings, LLC ("SEPH"), a wholly owned subsidiary of Park, and Vision ceased to exist.  Among the "bad" assets retained by Vision and transferred to SEPH was the Loan.

In January 2013, the plaintiff sent the defendants a letter identifying multiple defaults under the Agreement and demanding that the defaults be cured or its participation interest repurchased as provided for in the Agreement.  The defendants neither cured nor repurchased.

The four counts against the defendants assert the following:  (1) breach of contract; (2) negligence; (3) willful misconduct; and (4) specific performance.

## DISCUSSION

The defendants seek dismissal under Rule 12(b)(6).  They seek a more definite statement under Rule 12(e).

## I.  Motion to Dismiss.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  Fed. R. Civ. P. 8(a)(2).  Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002).  It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from

2

which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

These are the pleading requirements of Rule 8(a)(2), and failure to meet them exposes a complaint to dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, *and* makes a satisfactory showing that, in certain, specified respects, for certain,

specified reasons, the complaint falls short of that standard.[1]  Vague, generalized assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond.

### A. Cognizable Injury.

The defendants initially argued that the complaint should be dismissed in its entirety for failure to allege a "cognizable injury."  (Doc. 10 at 4-5).  In their reply brief, the defendants "abandon their cognizable injury argument for purposes of the motion to dismiss."  (Doc. 20 at 12).  The Court therefore moves on.

### B.  Breach of Contract.

The defendants argue that Park should be dismissed as a defendant because it is not a party to the Agreement.  They also argue that portions of the claim should be dismissed because they depend on the breach of obligations the Agreement does not impose.  (Doc. 24 at 11-14).

### 1.  Park as a defendant.

The defendants argue in their principal brief that Park must be dismissed because the complaint pleads no facts supporting the allegation that Park "has undertaken the duty to fulfill Vision's contractual obligations."  (Doc. 1, ¶ 65; Doc. 10 at 7).  As the plaintiff points out, the complaint also asserts Park's contractual liability based on an alter ego theory.  (Doc. 1, ¶ 64).  In their reply brief, the defendants attack the alter ego theory, (Doc. 20 at 5-9), but the effort comes too late.  "District courts, including this one, ordinarily do not consider

---

[1] This necessarily follows from the principle that the movant bears the burden of showing that dismissal for failure to state a claim is warranted.  *E.g., Beck v. Deloitte & Touche,*  144 F.3d 732, 735-36 (11th Cir. 1998); *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012).

arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale). The defendants offer no reason the Court should depart from this well-established rule. Considering that the alter ego theory of contractual liability is explicitly articulated in Count One, the Court can discern no basis for excusing the defendants' failure to address it until their reply brief.

### 2. Absence of contractual obligation.

The complaint identifies eight ways that the defendants breached the Agreement. (Doc. 1, ¶ 67). The defendants argue that Count One should be dismissed to the extent it depends on three of these. (Doc. 24 at 8-10).

The complaint alleges breach by: (1) failing to apprise the plaintiff of additional loans made to the guarantors; (2) terminating Vision Bank's existence; and (3) refusing to repurchase the plaintiff's participation interest. (Doc. 1, ¶ 67.a, c, h).

The defendants point out that the Agreement specifically provides that Vision "will give [FNB] prior notice of any future extensions of credit … *to the Borrower(s)* other than under the Loan." (Doc. 1, Exhibit 1, ¶ 15.f (emphasis added)). The defendants conclude that the Agreement requires notice only of extensions of credit to Marine, not the guarantors. (Doc. 10 at 9). The plaintiff responds that the obligation resides in paragraph 10, which requires Vision to keep the plaintiff fully informed of any circumstances that "could have a material adverse effect on the Loan or the value of the Collateral securing the Loan." (Doc. 1, Exhibit 1, ¶ 10). In a single, conclusory sentence, the defendants reply that loans to a guarantor do not have such an effect, but they offer no analysis that could permit the Court to draw the same conclusion as a matter of law. The defendants concede that loans to guarantors "may affect the bank's ability to collect on the Loan in the event of default by the borrower," (Doc. 20 at 10), yet

they provide no basis for concluding that paragraph 10 does not embrace such collectability issues in the term, "material adverse effect on the Loan."

In their principal brief, the defendants assert generally that "the plain language of the Agreement does not identify 'termination of existence' in and of itself as a breach of an obligation." (Doc. 10 at 9). This is the sum total of the defendants' argument, with no identification of what else might be required or what necessary allegations might be missing. As noted, such superficial presentation passes no burden to the plaintiff or the Court. In their reply brief, the defendants finally play their card, arguing that only the *commencement of proceedings* to terminate Vision's existence could breach the Agreement. They continue that the complaint does not allege such a proceeding and conclude the claim is thus factually insufficient. (Doc. 20 at 9-10). Again, the defendants have waited too long to make this argument, especially since it is clear from their "in and of itself" language that they were aware of the "proceeding" argument but elected not to assert it initially.[2]

The defendants next argue that the complaint does not allege the "pre-requisite obligations [for repurchase] … imposed by the Agreement." (Doc. 10 at 9). Again, no explanation of this conclusory position is offered, and it is plainly erroneous. The Agreement requires repurchase if SEPH "shall fail to cure any default by Originating Bank under this Agreement within thirty (30) days after notice from [the plaintiff] specifying the default," (*id*., ¶ 13.d), and the complaint expressly alleges that the plaintiff sent such a demand letter and that the

---

[2] At any rate, "proceeding" is an undefined term, and the defendants have done nothing to show that the sale of Vision's "good" assets to Centennial Bank, followed by Vision's merger into SEPH – facts that are expressly alleged in the complaint – could not constitute proceedings within the contemplation of the Agreement. To the uncertain extent the defendants suggest the complaint must use the term "proceeding," they "offer no support for the remarkable proposition that a pleading must not only state the facts but explain their import as well." *Renasant Bank v. Park National Corp.*, 2013 WL 1499580 at *3 (S.D. Ala. 2013).

defendants neither cured the defaults nor honored their repurchase obligation. (Doc. 1, ¶ 59).

Finally, the defendants insist the plaintiff was required to allege "all of the elements required to demonstrate its entitlement to [the] remedy" of specific performance "imposed … under Alabama law." (Doc. 10 at 9). The defendants cite generally to Alabama Code § 8-1-40, which provides that "[s]pecific performance cannot be enforced against a party to a contract in any of the following cases …." The plausibility standard of *Twombly* and *Iqbal* derives from Rule 8(a)(2), which governs the pleading of "the claim." The defendants, however, insist that specific performance is *not* a claim but a only a remedy. (Doc. 10 at 16). If that is so, the pleading of specific performance presumably is governed by Rule 8(a)(3), which addresses the pleading of the "demand for the relief sought." The defendants have not attempted to show that the plausibility standard extends to Rule 8(a)(3), which does not include the key language on which the *Twombly* Court relied.[3] Nor do they cite any authority for the proposition that the non-existence of the circumstances listed by the statute is an "element" of a specific performance remedy that must be plausibly pleaded. At any rate, the Agreement explicitly provides that "Participating Bank shall have the right to maintain an action for specific performance against Originating Bank to enforce Participating Bank's rights [to re-purchase of its participation interest] under this Section 13." (Doc. 1, Exhibit 1, ¶ 13).[4] That provision, agreed to if not

---

[3] Rule 8(a)(2) requires a "statement of the claim showing that the pleader is entitled to relief," and the *Twombly* Court rested its plausibility standard on this language. 550 U.S. at 555-57. Rule 8(a)(3) contains no similar language, instead requiring only that a demand for relief be made.

[4] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

authored by Vision, of its own weight renders it plausible that the circumstances disfavoring specific performance do not exist.[5]

### C.  Tort Claims.

Counts Two and Three allege that the defendants breached "a duty to exercise reasonable care and diligence in their administration of the Loan, and to act in a commercially reasonable manner."  (Doc. 1, Exhibit 1, ¶¶70-71, 74-75).

### 1.  Tort duty owed by SEPH.

> Originating Bank agrees to exercise the same degree of care in administering [the plaintiff's] Participation Interest in the Loan that Originating Bank customarily exercises in handling similar loans for its own account; however, Originating Bank shall be liable to [the plaintiff] only for losses due to Originating Bank's lack of commercially reasonable conduct[,] negligence or willful misconduct.

(Doc. 1, Exhibit 1, ¶ 16.d).

The defendants argue that the only duties owed by SEPH to the plaintiff are those imposed by the Agreement and that the only remedy for breach of those duties sounds in contract, not tort.  (Doc. 10 at 10-12).  The plaintiff counters that, "[i]n Alabama, one who contracts with another and expressly promises to use due care is undoubtedly liable in both tort and contract when his negligence results in injury to the other party."  *Blumberg v. Touch Ross & Co.*, 514 So. 2d 922, 927 (Ala. 1987).  The plaintiff also quotes this Court for the proposition that breach of a duty implied by or arising out of a contract (but not expressly set forth therein)

---

[5] Similarly, the defendants argue the demand for specific performance must be stricken for lack of an allegation that the plaintiff has no adequate remedy at law.  (Doc. 10 at 17).  But they have not attempted to show that such pleading is necessary when the parties' agreement explicitly provides for the remedy of specific performance.  At any rate, that provision plausibly reflects the parties' realization that no adequate remedy at law exists.  *See SunTrust Mortgage, Inc. v. Old Second National Bank*, 2012 WL 1656667 at *3 (E.D. Va. 2012) (where parties agreed to re-purchase obligation in addition to other remedies, claim for specific performance would not be dismissed for failure to allege lack of adequate remedy at law).

may be actionable in tort.  *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *14 (S.D. Ala. 2008) (summarizing *Brown-Marx Associates, Ltd. v. Emigrant Savings Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983)).  The defendants do not challenge these legal propositions but simply invite the Court to review the complaint on its own and figure out which if any portions of the tort claims fall outside these safe harbors.  (Doc. 20 at 11).  The Court declines to perform the defendants' work on their behalf

### 2.  Tort duty owed by Park.

The defendants assert vaguely that the plaintiff "has not and cannot plead facts to demonstrate the existence of a duty" owed it by Park.  (Doc. 10 at 12). But the defendants have not addressed what Alabama law requires in order to impose such a duty and, without doing so, they cannot successfully assert that the plaintiff has inadequately pleaded its existence.[6]

The defendants argue that Counts II and III limit the alleged duty to one involving the Agreement, and they deny that the complaint asserts that Park "played any role whatsoever in regard to the Agreement."  (Doc. 10 at 12-13). Assuming without deciding that the first proposition is correct, the second is not. Without purporting to be exhaustive, the Court notes the complaint's allegations

---

[6] Although the defendants' opaque ipse dixit triggers no judicial obligation to examine it further, the Court notes that "a duty of due care can arise in the absence of a contract, based on a number of factors, including public policy, social considerations, and foreseeability [of harm]. … The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised." *Southland Bank v. A&A Drywall Supply Co.*, 21 So. 3d 1196, 1217 (Ala. 2008) (internal quotes omitted). The defendants have not attempted to show that the numerous allegations of the complaint fail to suggest plausibly the foreseeability of harm to the plaintiff from Park's conduct.

It also appears that a defendant can be liable for the torts of its alter ego.  *See Brown v. Standard Casket Manufacturing Co.*, 175 So. 358, 362 (Ala. 1937).  As noted in Part I.B.1, the defendants have not shown that the plaintiff's assertion of alter ego liability is illegitimate.

that Park sold Vision's "good" assets to Centennial Bank, created SEPH, and merged Vision into SEPH, thereby terminating Vision's existence in violation of the Agreement.  (Doc. 1, Exhibit 1, ¶¶ 5, 40-42, 44, 67.c).

### 3.  Economic loss rule.

The defendants propose that the tort claims are barred by Alabama's version of the economic loss rule.  (Doc. 10 at 13-16).  "The economic-loss rule prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." *Public Building Authority v. St. Paul Fire & Marine Insurance Co*., 80 So. 3d 171, 184 (Ala. 2010) (internal quotes omitted).  This case does not concern economic damage caused by a product.  The plaintiff pointed this out, and the defendants offer no reply.

### D.  Specific Performance.

The defendants argue that specific performance is not a cause of action but a remedy that the plaintiff must plead in association with a viable cause of action.  (Doc. 10 at 16).  Since the plaintiff invokes specific performance as a cause of action, the defendants demand that Count IV be dismissed.  Although a reasonable position, the defendants have not shown that Alabama refuses to recognize a cause of action for specific performance, and the Court, in a brief review, found several dozen appellate cases addressing "claims" and "counts" for specific performance without a murmur that no such cause of action exists.

In the alternative, the defendants assert the complaint fails adequately to allege such a cause of action.  (Doc. 10 at 16-17).  This argument fails for reasons set forth in Part I.B.2.

## II.  Motion for More Definite Statement.

Calling the plaintiff's pleading a "shotgun complaint," the defendants request that the plaintiff be required to replead under Rule 12(e).  (Doc. 10 at 17-18).

"The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  The instant complaint employs incorporation by reference and hence meets this technical definition of a shotgun complaint.

But Rule 12(e) does not authorize repleader simply because its counts incorporate earlier paragraphs; instead, the pleading must be "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  Certainly that standard may sometimes be met by a shotgun complaint, but the defendants have not shown it to be satisfied in this case; indeed, they have not attempted to do so.  Instead, they advance the erroneous position that the mere usage of incorporation of itself requires repleader.  (Doc. 10 at 18).  This is incorrect, and the Court's familiarity with the complaint permits it to comfortably draw the conclusion that its use of incorporation by reference does not impair the defendants' ability to frame a responsive pleading for purposes of Rule 12(e).[7]

The defendants also object that the complaint "has improperly combined Vision, SEPH and Park into single subjects and objects," making it "difficult … to understand" which defendant allegedly did what.  (Doc. 10 at 17-18).  The defendants identify, and the Court can detect, no instances of such

---

[7] As the defendants' own authority states, relief under Rule 12(e) is available to address a shotgun pleading when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. District Board of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996).  That standard is not remotely approached by the complaint in this action.

"combin[ation]"; the complaint appears uniformly to address the three entities separately.  And it can hardly be confusing for the complaint to allege that Park engaged in certain conduct, that SEPH engaged in certain conduct, and that both defendants engaged in certain conduct.  Nor can it be confusing to allege that Vision engaged in certain conduct, for which SEPH and Park are responsible under varying theories.  Notably, the defendants identify not a single example of an allegation so vague or ambiguous that they cannot respond to it.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss and motion for more definite statement are **denied**.

DONE and ORDERED this 23rd day of April, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE