# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| FNB BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 13-0064-WS-C |
| | ) | |
| PARK NATIONAL CORPORATION, et al., | ) ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER

This matter is before the Court on the motion of defendant and counterclaim plaintiff SE Property Holdings, LLC ("SEPH") for partial summary judgment on Count One of its counterclaim. (Doc. 115). The plaintiff and SEPH have filed briefs and evidentiary materials in support of their respective positions, (Docs. 115-16, 138-39, 152), and the motion is ripe for resolution.

## BACKGROUND

The background of this litigation is set forth in other orders and will not be repeated here. Suffice it to say that SEPH's predecessor ("Vision") sold the plaintiff a 100% participation interest in a loan ("the Loan") to Marine Park, LLC ("Marine"), pursuant to a participation agreement ("the Agreement"). Marine defaulted, and Vision filed suit against Marine and the guarantors. Count One of SEPH's counterclaim asserts that the plaintiff breached the Agreement by not paying its share of expenses incurred in "foreclosing on the Collateral and instituting and aggressively pursuing litigation against the Borrower and Guarantors in connection with the Loan." (Doc. 51 at 39). Count One identifies the amount of legal fees and expenses that Vision and/or SEPH "incurred in the litigation against the Borrower and the Guarantors through January 31, 2013 [as]

$272,797.20." (*Id.*). The instant motion seeks partial summary judgment in this amount.

**DISCUSSION**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

Section 9 of the Agreement provides in pertinent part as follows:

Participating Bank shall promptly remit to Originating Bank, upon

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

> request, its proportionate share of *approved, commercially reasonable expenses* incurred by Originating Bank in connection with the Loan which are not expenses of general overhead of Originating Bank, but are the types of expenses which: (a) Participating Bank herein agrees to pay, or (b) are a *logical consequence of approved action* taken by Originating Bank, including, without limitation, approved action in response to default under any one or more of the Loan Documents and are *not the result of Originating Bank's negligence, willful misconduct or material breach*.

(Doc. 130, Exhibit A at 5, § 9.a (emphasis added)).

According to the plaintiff, (Doc. 138 at 7), there are four requirements for an award of attorney's fees and expenses[2] under Section 9.a: (1) that the fees and expenses are a "logical consequence of approved action taken … in response to default"; (2) that they "are not the result of [Vision's] negligence, willful misconduct or material breach"; (3) that they are "commercially reasonable"; and (4) that they are "approved," which the plaintiff construes to mean, formally approved by the plaintiff, after being incurred and presented to the plaintiff but before being paid by Vision. (*Id*.).

SEPH accepts the first three elements but argues that the fourth does not exist. Instead, it says, an expense that is a logical consequence of approved action is thereby an "approved … expense" under Section 9.a. (Doc. 152 at 3). Although SEPH's construction seems more plausible, the Court need not definitively resolve the issue, because it is clear that SEPH has not met its burden as to the three elements it agrees must be satisfied.

Pursuant to the Agreement, Vision "shall, subject to the provisions of this Agreement, retain all rights with respect to enforcement, collection, and administration of the Loan and the security underlying the Loan therefore [sic] in accordance with the terms of this Agreement." (Doc. 130, Exhibit A at 8, § 16.c). Because a post-default decision to sue the borrower and/or guarantors, as well as a decision to proceed against the collateral, must be made or approved by the

---
[2] The plaintiff does not dispute that "expenses" under Section 9.a include attorney's fees.

plaintiff, (*id*. at 9, § 16.e), it can be assumed that the plaintiff approved Vision's action in suing Marine and the guarantors. Thus, the fees and expenses incurred in connection with suing Marine and the guarantors presumably represent expenses that are a "logical consequence of approved action."

But these are not the only fees and expenses for which SEPH seeks reimbursement. There is evidence: (1) that Vision also sued the borrower and guarantors on various loans to Bama Bayou, LLC ("Bama Bayou"), in which loans the plaintiff had no interest; (2) that the cases were consolidated; (3) that the defendants in those actions filed counterclaims asserting that Vision's alleged misconduct – most of which occurred in connection with the Bama Bayou loans and/or other Marine loans in which the plaintiff had no interest – had cost the counterclaim plaintiffs over $21 million; (4) that the counterclaim plaintiffs sued Vision's parent ("Park") as well; and (5) that the plaintiff herein was named a counterclaim defendant in that action only because it was a necessary party to the sixth counterclaim, which sought an order setting aside various foreclosure deeds, including the one involving the collateral for the Loan. The plaintiff understandably objects to being asked to pay fees and expenses incurred by Vision and/or SEPH to recover on other loans and in defending counterclaims to protect their own interests and those of Park.[3]

SEPH's way of dealing with the interwoven nature of the fees and expenses is to assign the plaintiff responsibility for 25% of those fees and expenses, on the theory that its $5 million participation interest represents 25% of the total funds that Vision loaned to Marine and Bama Bayou. (Baggett Affidavit, Exhibit B).[4] But SEPH has done nothing to show that this crude device even remotely reflects

---

[3] According to the plaintiff (which has seen the billing entries), SEPH is seeking reimbursement of legal expenses incurred on behalf of Park. (Doc. 138 at 3 n.1).

[4] SEPH's barebones motion does not acknowledge the complicated nature of the underlying litigation or explain SEPH's rationale for the $272,797.20 figure. The Court should not have had to rely on the plaintiff to bring these matters to light.

reality, much less that it does so with whatever degree of precision Section 9.a requires. It has thus failed to meet its burden of showing that no reasonable jury could find other than that the fees and expenses it seeks are, in full, a logical consequence of the approved action of suing Marine and the guarantors to recover the indebtedness on the single Loan in which the plaintiff is interested.

SEPH argues that its fees and expenses incurred in defending itself, and Park, from eight-figure counterclaims are reimbursable – not just in part but in toto – because Section 9.a provides for reimbursement of expenses "sustained in connection with the Loan."[5] (Doc. 152 at 5-6). Of course, the counterclaims focus in large part on Vision's conduct independent of the Loan, conduct in connection only with other loans to which the plaintiff is a stranger. But even as to those counterclaims having some connection with the Loan, Section 9.a is not nearly so broad as SEPH paints it. That provision defines expenses "in connection with the Loan" as being limited to those expenses: (1) that the plaintiff, within the Agreement itself, agreed to pay (which is not alleged); or (2) that are the logical consequence of approved action. There has been no suggestion that the plaintiff approved of Vision engaging in the misconduct of which the counterclaims accuse it, no suggestion that the circumstances in any way fit the counterclaims within the narrow bounds of Section 9.a.

SEPH argues that Alabama law (by which the Agreement is governed) permits recovery of fees and expenses incurred to defend against claims asserted by Marine and the guarantors to avoid their contractual obligations. (Doc. 152 at 6). The question would seem to be one of contract construction rather than Alabama law but, in any event, the Court need not resolve the issue, since even a resolution favorable to SEPH would not establish that the $272,797.20 it seeks to recover is the appropriate figure.

---

[5] SEPH appears to concede it cannot recover fees and expenses incurred in pursuing its own claims on the other loans.

6

As noted, the plaintiff need not reimburse SEPH for fees and expenses incurred as a result of Vision's negligence, willful misconduct or material breach. As SEPH concedes, (Doc. 152 at 7), the counterclaims in the underlying litigation encompass allegations of this quality. However, SEPH suggests that, because those allegations remain unproved, the plaintiff can avoid paying those expenses only by proving that Vision's conduct made the basis of the counterclaims was in fact negligent. (*Id*.). SEPH has placed the shoe on the wrong foot; it is SEPH's burden to show that it is entitled to reimbursement, not on the plaintiff to show it is not.[6]

As to the commercial reasonableness of the requested fees and expenses, SEPH relies exclusively on the unadorned affidavit of its vice-president that he is "familiar with the rates, fees and expenses charged for and in connection with the performance of legal services in Mobile and Baldwin Counties in the State of Alabama" and that "[i]t is [his] opinion that the rates, fees and expenses incurred were reasonable and necessary in response to default on the loan by Marine Park, L.L.C." (Baumeister Affidavit, ¶¶11-12). SEPH is an Ohio entity, and Baumeister executed his affidavit in Ohio. SEPH has produced no evidence that Baumeister is an attorney or that he has ever even been to south Alabama, much less that he possesses the necessary degree of familiarity with area legal billing rates and practices that would form a necessary predicate to his expression of a legally relevant opinion.[7] Indeed, there is no evidence that he has even reviewed counsel's billing statements – which have not been provided to the Court, either.

---

[6] It appears that SEPH has taken a wrong turn within the Agreement, because it quotes a portion of Section 9.a that addresses the distribution of "losses," not the portion at issue here, which addresses the distribution of "expenses."

[7] Baumeister professes familiarity only with rates, fees and expenses for "the performance of legal services" generally, not for cases of this type. Nor has he shown that his familiarity extends beyond the underlying litigation, which is far too small a sample to support his opinion. And with no evidence he is an attorney, it is doubtful his opinion could be considered even were he to overcome the other deficiencies in his presentation.

7

It is difficult to imagine a less satisfactory showing of the reasonableness of requested fees and expenses.

The plaintiff points out all these problems and adds that SEPH has failed to justify its requested fees by resort to the factor analysis employed by Alabama courts in making awards under contractual fee provisions. (Doc. 138 at 11-12).[8] SEPH's remarkable response is that its only burden is to throw out a figure it demands to be paid, with it then being the plaintiff's burden to invoke these factors and satisfy the Court that they justify a reduction in the proposed fees. (Doc. 152 at 8). It is SEPH's burden, however, to prove all the elements of its claim, including the reasonableness of its requested fees and expenses, and it cannot meet that burden by ignoring the law under which reasonableness must be evaluated.

For the reasons set forth above, SEPH's motion for partial summary judgment is **denied**.

DONE and ORDERED this 27th day of December, 2013.

> s/ WILLIAM H. STEELE
> CHIEF UNITED STATES DISTRICT JUDGE

---

[8] *See, e.g., Huntley v. Regions Bank*, 807 So. 2d 512, 518 (Ala. 2001).