# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| FNB BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 13-0064-WS-C |
| | ) | |
| PARK NATIONAL CORPORATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The plaintiff has filed a motion to strike the expert testimony of defense expert Donald Coker. (Doc. 160). The defendants have filed a response, (Doc. 167), and the motion is ripe for resolution.

The plaintiff's motion is filed pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Under *Daubert* and its progeny, we conduct a three-part inquiry to determine the admissibility of expert testimony …." *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1183 (11th Cir. 2013). "Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (quoted in *Tampa Bay Water*, 731 F.3d at 1183).

The burden of establishing these three requisites lies with the proponent. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).[1]

**I. Qualifications.**

The plaintiff argues that Coker is not qualified to render expert opinions regarding participation loans. (Doc. 160 at 13-15). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Despite his 40+ years experience as a banker and banking consultant, the plaintiff denies that Coker has such qualifications as to participation loans because: (1) he has not been employed as a banker since 1988; (2) he has had no experience with participation loans since the early 1990s; (3) his curriculum vita does not describe any "specific experience" with participation loans; and (4) in his deposition, he likewise did not describe any "specific experience, education, or training" dealing with participation loans. (Doc. 160 at 14-15).

Coker's expert report states that his "background and experience include a significant amount of training in all areas of banking and mortgage banking including … participations …." (Doc. 161, Exhibit A, ¶ 3). His "education, training, work, and management experience include specific experience in development and construction financing and loan participations." (*Id*., ¶ 4). Moreover, his "experience as a banking regulator included handling many development and construction loans and numerous loan participations." (*Id*.).

---

[1] Whether to conduct an evidentiary hearing is a decision committed to the Court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id*. (internal quotes omitted). For example, "[a] district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Neither side has requested a hearing, and the motion is sufficiently simple that a hearing would be of no assistance. Accordingly, the Court exercises its discretion against conducting such a hearing.

In his deposition, Coker testified that he had experience with participation loans, which he managed or was otherwise involved with, at every bank with which he was employed between 1968 and 1986, excluding only a one-year stint with Ford Motor Credit. At least at Commercial Credit, where he worked from 1977 to 1983, he handled "a lot" of participations. After concluding his regular banking employment in 1986, he managed two insolvent banking institutions for over two years, each of which had "a lot" of participations. In the early 1990s, Coker did consulting work involving loan participations for the FDIC concerning two other institutions. (Coker Deposition at 19-22, 28-29; Doc. 161, Exhibit A at 37).

It is clear from this evidence that Coker has more than adequate experience with participation loans to offer expert testimony concerning them in this case. While the plaintiff decries the absence of more detail concerning Coker's "specific experience" with participation loans (what the plaintiff might have in mind is left unstated), it cites no authority for the proposition that such detail is a necessary predicate to admissibility, and it ignores its own failure to seek such information when it deposed Coker. And while the plaintiff suggests that Coker's qualifying training and experience is dated, it does not assert that participation loan practices, standards and so forth changed at all in the 12-15 years between his last experience and the subject participation loan, much less that they changed so radically as to render his experience and training an unsuitable predicate for expert testimony. The plaintiff's challenge to Coker's qualifications to testify as an expert is rejected.

**II. Opinions Contrary to the Evidence.**

The plaintiff argues that expert opinions are inadmissible if they are contrary to the facts of the case. (Doc. 160 at 15-16). The Supreme Court decision to which the plaintiff's authority may be traced provides that, "when indisputable record facts contradict or otherwise render the [expert] opinion

unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). To the extent that Coker's opinions rest on assumed facts that have been established as non-existent, the plaintiff may have an argument for exclusion, but the only two instances it cites do not involve such a situation.

First, the plaintiff challenges Coker's assumption that Darrell Melton had no decision-making authority in regard to the Marine Park development. (Doc. 160 at 17). It appears uncontroverted that Melton originated the Loan, but the plaintiff's own evidence is that Melton did not make the decision to make the Loan but only gathered information for underwriting and presented the proposed loan to a committee to approve or disapprove. (Rhode Deposition at 65). While the plaintiff has some evidence that Melton may have helped administer the Loan, (*id*. at 65-66), the defendants have the affidavit of Melton himself, who denies any such activity. (Doc. 134, Exhibit H, ¶ 3). Since Melton's decision-making authority is not "indisputable," Coker's opinions cannot be excluded on that basis.

Second, the plaintiff opposes Coker's testimony that he disagrees with defendant Park's assessment of the Loan (material overfunding issues and material cost overruns) and of the quality of Vision's management and administration of the Loan (poor). (Doc. 160 at 17-18). But the plaintiff has not attempted to show that Park's assessment of the situation constitutes an "indisputable record fac[t]" that Coker (and the jury) must accept; on its face, Park's assessment appears to be in the nature of an opinion, with which Coker is of course free to disagree.

### III. Factual Testimony.

The plaintiff asserts that an expert cannot be used as a "vehicle for factual narrative." (Doc. 160 at 19 (internal quotes omitted)). The two authorities on which the plaintiff relies emphasize the limited scope of this rule. *Securities and Exchange Commission v. Tourre*, ___ F. Supp. 2d ___, 2013 WL 3089031 at *3 (S.D.N.Y. 2013) ("Acting *simply* as a narrator of the facts does not convey

opinions …. *Mere* narration thus fails to fulfill *Daubert*'s most basic requirements.") (emphasis added); *LaSalle Bank National Association v. CIBC Inc.*, 2012 WL 466785 at *7 (S.D.N.Y. 2012) ("[A]n expert witness may not offer testimony which *merely* rehashes the testimony of percipient witnesses.") (emphasis added). The sentences from Coker's report – and they are only a few sentences – to which the plaintiff objects do not constitute a "factual narrative" and do not render Coker a mere narrator. Instead, they provide the necessary factual underpinning for his opinions, without which his report would be subject to attack as noncompliant with Rule 26(a)(2)(B).

**IV. Knowledge.**

The plaintiff asserts that Coker cannot testify as to its knowledge of certain facts. (Doc. 160 at 20-29). But the single authority on which it relies does not, and properly could not, preclude an expert from relying on factual assumptions as to a party's knowledge, at least not as long as a jury properly could find such knowledge. There appears to be record evidence of each of Coker's assertions as to the plaintiff's knowledge; certainly the plaintiff has not shown that the record negates such knowledge.[2]

---

[2] In particular, from prior motions and submissions in this case, the Court is aware of evidence that: the plaintiff in August 2008 knew the Loan had been downgraded, (Doc. 160 at 23-24); that the plaintiff knew the due date of the Loan, (*id*. at 26); and that the plaintiff learned of the merger. (*Id*. at 27). It is less clear whether there is record evidence that the plaintiff knew the Loan carried significant risk, (*id*. at 29), but the plaintiff has not shown that it indisputably was unaware of such risk.

The plaintiff raises its knowledge objection as to two other portions of Coker's report, but neither actually asserts that the plaintiff had knowledge of a particular fact. Coker states "it was known" that the construction cost was $21 million, not that the plaintiff knew the cost. (Doc. 160 at 21-22). And Coker states that a particular disbursement "was fully disclosed to Plaintiff on the closing statement," not that the plaintiff consciously knew of the disbursement. (*Id*. at 28).

5

## V. Intent.

The Court indulges the plaintiff's assumption that Coker cannot testify as to its subjective intent either as a fact (since he does not know the plaintiff's mental state) or as an opinion (since he is not qualified to render such an opinion). (Doc. 160 at 19, 20) The plaintiff identifies three alleged instances of Coker testifying as to its mental state, but the Court finds no such testimony.

First, Coker states that "Plaintiff did not require the certificate of substantial completion before it made its final funding." (Doc. 160 at 27-28). This is a statement of the plaintiff's act or omission, not of its intent. Second, Coker states that "Plaintiff knew that there were significant risks in the loan and voluntarily took on those risks without proper due diligence," proximately causing the plaintiff harm. (*Id.* at 29). This may be a statement of knowledge, but it is not a statement of intent. Finally, Coker states that, "[l]ogically, the acceptance of a more severe downgrade from a 5 to a 6 [and there is evidence the plaintiff accepted this downgrade] indicates that the Plaintiff also would have accepted the earlier downgrade from a 4 to a 5." (*Id.* at 23). This is not a statement of the plaintiff's intent but a prediction of how the plaintiff would have responded had it been informed of the first downgrade.

## VI. Legal Conclusions.

The plaintiff correctly notes that an expert may not offer legal conclusions. (Doc. 160 at 18). But it goes off track when it asserts that Coker's opinion that the plaintiff did not suffer any damages from various alleged breaches by the defendants is an impermissible legal conclusion. (*Id.* at 20-27).

"Although testifying experts may not offer legal conclusions, [Rule 704(a)] provides, in relevant part, that 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) (quoting a former version of Fed. R. Evid.

6

704(a)).[3] The existence vel non of damages, and of a causal connection between any damages and the defendant's conduct, are quintessentially ultimate issues to be decided by the jury. *E.g., Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F.3d 701, 705 (11th Cir. 2005); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 n.15 (11th Cir. 2003); *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1505 (11th Cir. 1985).

A single objection is not captured by this analysis. Coker opines that the existence of two liens "caused no damage to the title ultimately received by the Plaintiff," and the plaintiff objects that this constitutes a legal conclusion as to the effect of a lien upon title. (Doc. 160 at 25). The defendant offers no response. Because the effect of a lien upon title would appear to constitute a legal conclusion, which Coker may not deliver, the motion in limine will be granted to this extent.

**VII. Contract Interpretation.**

"A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Under this rule, an expert may not offer an opinion about the scope of an insurer's duty under an insurance policy (specifically, whether the insured's duty to defend required it to retain counsel specializing in tax matters) because "[t]his [i]s a legal conclusion …" *Id.*; *see also Maiz v. Virani*, 253 F.3d 641, 668 n.19 (11th Cir. 2001) (the *Montgomery* Court "ruled that the district court should not have allowed an expert to state his opinion regarding the duties created by an insurance contract," while the expert in *Maiz*, in contrast, "did not purport to tell the jury how it should interpret the contracts").

---

[3] Rule 704(a) currently provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The alteration in language is "stylistic only." Advisory committee notes, 2011 amendments.

The plaintiff, invoking *Montgomery*, argues that Coker's report repeatedly violates this rule. (Doc. 160 at 18-27).

Most of the instances cited by the plaintiff do not in fact implicate this rule. In these instances, Coker does not purport to interpret the participation agreement or any other contract, and the plaintiff's beef is actually that Coker's opinion (usually concerning damages) is faulty because it "ignores" the relevant contract. (Doc. 160 at 21-24, 28-29).

There are three instances in which Coker does reference contractual provisions. First, he testifies that the defendants' September 2007 loan to Bama Bayou did not breach the participation agreement. (Doc. 160 at 24). Second, he testifies that, "[i]n accordance with the construction loan agreement, an increase in construction costs would have to be borne by the developer." (*Id*. at 25-26). Third, he testifies that the plaintiff "breached their [sic] duty by failing to monitor the loan" and, similarly, "failed to exercise their [sic] duty to monitor the loan." (*Id*. at 26).

Testimony that conduct did or did not breach the participation agreement appears plainly to be captured by *Montgomery*. The defendant ignores *Montgomery* and instead urges the Court to follow a trial court decision from Utah. (Doc. 167 at 11). That decision contains no analysis, involves circumstances not shown to exist here, and cannot trump the Eleventh Circuit in any event. The defendant's two other cases – also from outside this Circuit – permitted an expert to testify that a litigant performed in a "commercially reasonable" manner as required by contract. (*Id*. at 12). Coker, however, offers no comparable testimony but simply asserts that certain conduct did or did not breach a contract.

Testimony as to whether the construction loan agreement requires an increase in construction costs to be borne by the developer would appear to offer an interpretation of the contract. "The Eleventh Circuit and courts within the Eleventh Circuit have excluded expert testimony where it is simply a reiteration or

8

recasting of a parties' [sic] interpretation of a contract." *North American Specialty Insurance Co. v. Wells*, 2013 WL 4482455 at *2 (S.D. Ga. 2013). The defendant responds only that experts need not "refrain from relying on or making any reference to the terms of a contract." (Doc. 167 at 11). And this is no doubt correct, but it does not address the problem of Coker positing, as an expert, an interpretation of what the contract requires.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion in limine is **granted** to the extent that Coker will not be permitted to testify: (1) that the two liens caused no damage to the title ultimately received by the plaintiff; (2) that the September 2007 loan to Bama Bayou did not breach the participation agreement; (3) that the construction loan agreement requires an increase in construction costs to be borne by the developer; or (4) that the plaintiff breached its contractual duty by failing to monitor the loan. In all other respects, the motion is **denied**.

DONE and ORDERED this 27th day of January, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE